First Trust & Savings Bank, Plaintiff, Appellee, v. Three Thirty-Nine Templin Road Corporation et al., Defendants; Phi Kappa Psi Association, Appellant; F. A. Johnson, Receiver, Appellee.

No. 45557.

June 17, 1941.

Betty & Betty, for appellees.

Dutcher, Ries & Dutcher, for appellant.

Sager, J.—Plaintiff brought foreclosure proceedings under a trust instrument executed by the defendants. This resulted in a decree which, among other matters, provided that Johnson be appointed receiver. He was authorized to "collect the rents, earnings, income and profits thereof, to pay taxes", etc. On June 15, 1939, the premises were sold to appellant for $18,500.

On June 14, 1940, the receiver filed his final report setting forth receipts and disbursements, with a prayer that the balance shown be turned over to plaintiff for the use of bondholders. The report took no account of the taxes which had accrued after the foreclosure.

To this report appellant objected for the reason, in substance, that before the action was commenced, negotiations were had with the plaintiff which resulted in an agreement and understanding that appellant was to have a "clear title at the time it became the owner in fee simple of said premises and entitled to possession thereof;" that pursuant to that understanding the petition and decree were submitted to appellant's attorneys for approval; that the decree provided that the proceeds of the sale be applied to the payment of expenses, including taxes; that a receiver be appointed "to collect the rents and income thereof, to pay taxes, to keep the property properly insured"; and that Johnson, appellee, be appointed receiver authorized to collect the rents, "earnings, income and profits * * * to pay taxes, to keep said property insured against loss or damage."

Appellant further alleges that pursuant to its agreement with plaintiff it bid in the property for $18,500 but that notwithstanding the undertaking of its trust officer in the premises, the receiver refuses to pay the taxes accruing after the foreclosure although having on hand sufficient of rents and profits collected during the redemption period, after paying all other expenses, with which to comply with his agreement.

It appears, without dispute, that appellant was desirous of acquiring the property to use it as a fraternity house. It was hoped that title and possession could be acquired early enough to permit its renovation and improvement before the opening of scholastic activities at the university at Iowa City where the property was located. Negotiations were opened by appellant's secretary who went to Davenport to interview Johnson, plaintiff's trust officer and later receiver. At that time plaintiff was asking $20,000, a sum which appellant could or would not pay. During the negotiations it developed that no one could guarantee delivery and possession immediately. It was finally agreed that appellant would pay $18,500 and a year from the date of sale was to get a title free and clear from

encumbrance. The claim of plaintiff's trust officer that he did not have the same understanding may be accepted, under the record as we read it, only on the assumption that he had made a mental reservation by which he hoped to make appellant pay nearly $800 more than it understood it was to pay. A contract was submitted to appellant by plaintiff. It was rejected by defendants' attorney in these terms:

"You refer to our confirming the agreement reached at the conference on March 11, but so far as we are concerned we have decided that we cannot enter into the agreement which was tendered to us in writing. The only thing that we are authorized to say is that if foreclosure is commenced for the May 1939 Term of our Court, we will bid at Sheriff's Sale the sum of $18,500.00, the receiver to have possession of the property during the year of redemption and we to receive good title free of all liens when we take possession at the end of the year of redemption."

No further attempt was made to put an agreement in writing but, in apparent compliance with the understanding of the parties, foreclosure was started as above stated. The decree to be entered was examined by Mr. Swisher, an attorney and president of the Phi Kappa Psi Association, appellant. During his cross-examination, Mr. Swisher said to plaintiff's lawyer:

" * * * I told you myself that if we paid $18,500.00 we would have to have good title at the time of delivery * * *. I remember making it definite myself that we must have good title at the time we took possession, whether we got possession at that time or a year later."

This was not denied. Notwithstanding all this, the receiver's answer to appellant in the printed brief is that he didn't remember anything about his having to give a clear title; and in oral argument, that the decree as it relates to the payment of taxes was permissive and not mandatory. The receiver paid for repairs and insurance thinking it was his duty, but why he made a distinction with regard to taxes which he was authorized to pay by the same permission and in the same decree as the items mentioned is not made clear.

570

Appellant bargained for a title free from tax and all other liens. It should have it. We hold that the trial court erred in approving a final report which shows that plaintiff and the receiver failed to give it. This cause is accordingly reversed and remanded for a decree in conformity herewith.—Reversed and remanded.

HALE, C. J., and WENNERSTRUM, OLIVER, MILLER, BLISS, STIGER, and MITCHELL, JJ., concur.

GARFIELD, J., takes no part.